ASSOCIATED WRECKING AND SALVAGE CO., A CORPORATION, APPELLEE, V. WIEKHORST BROTHERS EXCAVATING & EQUIPMENT CO., A PARTNERSHIP, APPELLANT, UNIVERSAL OF OMAHA CASUALTY INSURANCE COMPANY, A CORPORATION, APPELLEE.

424 N.W.2d 343

Filed June 10, 1988.   No. 86-552.

Dan D. Stoller, for appellant.

John W. Steele of Schumacher & Gilroy, for appellee Associated Wrecking and Salvage Co.

HASTINGS, C.J., WHITE, and FAHRNBRUCH, JJ., and WOLF and McGINN, D. JJ.

HASTINGS, C.J.

This was an action involving oral contracts. The district court found in favor of the plaintiff both on express contracts and on an action in quantum meruit, and for the defendant Wiekhorst Brothers Excavating & Equipment Co. on its cross-petition for liquidated damages assessed against it by the city of Omaha for failure to complete its contract with the city on time. Defendant appeals, assigning as error the action of the trial court in allowing plaintiff to amend its pleading during trial to add a cause of action for quantum meruit and in failing to grant a judgment on its cross-petition in the amount of $3,700, notwithstanding the verdict of $1,700. We affirm.

During the year 1984, the defendant was the general contractor on a sewer project with the city of Omaha in the 99th and Frederick Streets area. By oral contracts the plaintiff agreed to lease to the defendant a crane with services of an operator to lay concrete pipe in an open ditch or creekbed for the sum of $10,000, a front-end loader Caterpillar for $3,000 for 1 month, and the use of a wrecking bar. Plaintiff's evidence would establish that its responsibility was simply to lift pipe sections off a truck and lower them into a preprepared ditch, under certain conditions. The defendant's evidence, on the other hand, was to the effect that plaintiff was to do the whole job, as far as the crane usage, for $10,000, no matter what it took to do the job. This was to include rental of the crane, the operator, fuel, oil, grease, and any help to move the crane in and

out of the jobsite, "the whole shooting match."

The crane and crane operator were placed on the jobsite as agreed, but numerous delays in performing the job were encountered. The first two pipes were placed in the ditch, but had to be removed because they did not fit together. This was apparently caused by a defect in the manufacturing of the pipes. Plaintiff's owner told the defendant that this removal of improperly fitted pipes would cost extra because he was paid to lay pipes, not to remove and re-lay them.

There was also evidence that approximately six pipes were laid, but they sunk into the ditch or creekbed and had to be removed and replaced. This was due to an improper design of the rock bed, having called for 1½-inch rock instead of 3-inch rock. The crane initially sat at the jobsite for several days, and during the delay to improve the bed, the crane was removed from the job to another jobsite. The crane was not returned to the storm sewer project for several weeks.

Later, a dispute arose among the workers. Plaintiff's crane operator claimed he was not receiving the help from defendant's workers which he was supposed to receive and walked off the job. He returned to work the next morning, but did not operate the crane as there was no one to help him and the defendant's manager did not want him there.

Ultimately, the defendant secured the services of another crane and completed the job. However, the completion of the project was 37 days late, and the defendant was charged $100 per day for late completion under the terms of its contract with the city.

Plaintiff claimed that it had completed approximately 50 percent of the job and billed the defendant for $5,000 for crane rental, $1,000 for setting and resetting the pipe that did not fit (8 hours at $125 per hour), $1,500 for extra work in removing and relaying pipes due to the improper bed (12 hours at $125 per hour), and $3,000 for Caterpillar rental. It was defendant's contention that plaintiff only completed approximately 30 percent of the job.

Several sets of pleadings have been filed. However, basically, the plaintiff claimed $3,000 for Caterpillar rental, $7,500 for crane rental, and $45 for use of a wrecking bar, all according to

specific rental contracts. The defendant, in its answer and cross-petition, alleged the failure of the plaintiff to substantially or materially perform its contract, and further sought reimbursement of the liquidated damages charged it by the city of Omaha.

During the course of the trial, and following plaintiff's rest, plaintiff was given leave to file a third amended petition alleging a cause of action in quantum meruit for its extra work in removing and relaying pipe on the two occasions previously stated in the fair and reasonable sum of $2,500. This was permitted over the objection of the defendant on the ground of surprise because it increased the prayer of the petition.

Although there were disputed questions of fact throughout the trial, they were decided adversely to the defendant by the jury. A jury's verdict will not be set aside unless it is clearly wrong. *Havlicek v. Desai*, 225 Neb. 222, 403 N.W.2d 386 (1987). In any event, no error was assigned in this regard.

Confining our discussion to the two errors raised, we first consider the claim relating to the amended petition. That really presents two questions in one. First, Neb. Rev. Stat. § 25-852 (Reissue 1985) provides in relevant part: "The court may . . . in furtherance of justice, and on such terms as may be proper, amend any pleading . . . by inserting other allegations material to the case, or, when the amendment does not change substantially the claim or defense, by conforming the pleading . . . to the facts proved." This statute concerning amendment of pleadings should be liberally construed to permit amendments when they are proposed at an opportune time and will be in the furtherance of justice. *Bittner v. Miller*, 226 Neb. 206, 410 N.W.2d 478 (1987). Pleadings, however, may not be amended at certain stages so as to change the issues or the quantum of proof as to any issue. *Id.* The decision to allow or deny such amendment rests in the discretion of the trial court. *Id.*; *Chlopek v. Schmall*, 224 Neb. 78, 396 N.W.2d 103 (1986); *West Town Homeowners Assn. v. Schneider*, 215 Neb. 905, 341 N.W.2d 588 (1983).

Error may not be predicated on the exercise of this discretion in the absence of a showing of prejudice.

"[A] party [who] has sustained the burden and expense of

> a trial and has succeeded in securing the judgment of a jury on the facts in issue . . . has a right to keep the benefit of that verdict unless there is prejudicial error in the proceedings by which it was secured."

*Poppe v. Petersen*, 221 Neb. 877, 884, 381 N.W.2d 534, 538 (1986).

The defendant objected to the amendment, not because it changed the issues, but simply because it increased the amount of the prayer for relief. No legitimate claim of prejudice was demonstrated by the defendant. If an amendment to a pleading during trial is permitted which does in fact create a prejudicial situation, no error on appeal may be urged absent a timely request for continuance on that ground. See *Schroll v. Fulton*, 213 Neb. 310, 328 N.W.2d 780 (1983).

The other part of the objection is somewhat different. That relates to defendant's claim that plaintiff was permitted to pursue a remedy both on an express contract and on a claim in quantum meruit. The defendant asserts that a party cannot plead an express contract and then prove and recover on quantum meruit, because an express contract precludes the existence of a contract implied by law or a quasi-contract.

In support of its contention, the defendant cites *Siebler Heating & Air Conditioning v. Jenson*, 212 Neb. 830, 833, 326 N.W.2d 182, 184 (1982), where we stated that "there cannot be an express and an implied contract for the same thing existing at the same time." We found that Siebler was "precluded from now seeking to have the court, on appeal, create a quasi-contract *in lieu of* the express contract upon which recovery was originally sought." (Emphasis supplied.) *Id.*

The defendant further relies upon *Reeves v. Watkins*, 208 Neb. 804, 305 N.W.2d 815 (1981), for the proposition that a party cannot recover upon a theory of quantum meruit where he pleads and relies during the trial solely upon an expressed contract. The gist of this message is that the allegations or pleadings and proof must agree. In other words, one must be sure to plead quantum meruit if he wishes to recover under that approach, which is exactly what plaintiff's third amended petition did.

Plaintiff's situation is contrasted from those cited by the

defendant as the plaintiff added a quantum meruit theory to *supplement* an express contract theory, not to act as a *substitute* for it. The theories were not exchanged, one for the other, but were to run side by side. Defendant's authorities are distinguishable in that they did not involve actions seeking recovery upon an original contract as well as upon a newly created quasi-contract.

Certainly, it is true that an implied contract cannot arise where an enforceable contract exists between the parties as to the same subject matter and a conflict would thereby result. *Siebler Heating & Air Conditioning, supra*; *Ryan v. Nelson*, 177 Neb. 130, 128 N.W.2d 592 (1964). However, one does not necessarily have to work to the exclusion of the other as "there may be an implied contract on a point not covered by an express contract . . . ." *Snater v. Walters*, 250 Iowa 1189, 1198, 98 N.W.2d 302, 306 (1959); *Smith v. Stowell*, 256 Iowa 165, 125 N.W.2d 795 (1964). "An implied agreement may be given effect where it is based on the subsequent conduct of the parties not covered by the express contract . . . ." 17 C.J.S. *Contracts* § 5 at 566 (1963).

> Where an express contract is silent as to some point or matter, recovery may then be had on an implied contract. . . . The right to recover in quantum meruit is independent of a claim on express contract and is based upon a promise implied in law to pay for beneficial services rendered knowingly accepted. *Campbell v. Northwestern National Life Insurance Co.*, 573 S.W.2d 496 (Tex. 1978).

*Hoffman v. Deck Masters, Inc.*, 662 S.W.2d 438, 441 (Tex. Civ. App. 1983).

Other jurisdictions have dealt specifically with the issue of "extra work" and stated:

> It is clear that quantum meruit and contract theories of recovery can be pursued simultaneously when the quantum meruit claim is solely for "extra work." In a building contract, extra work is work which is not within the contemplation of the contracting parties and is not controlled by the contract.

*Steinberg v. Fleischer*, 706 S.W.2d 901, 906 (Mo. App. 1986). One example of extra work was the removal of debris and its

replacement with proper soil—as it was not within the written contract for construction, in the case of *Husar Industries v. A.L. Huber & Son, Inc.*, 674 S.W.2d 565 (Mo. App. 1984).

The central issue then becomes whether the alleged "extra work" was encompassed in the plaintiff's cause of action for the balance claimed due under the contract it had allegedly substantially performed. For if the extra work was required by the contract, the plaintiff cannot seek to be compensated under the idea of quantum meruit.

The expression "quantum meruit" means "as much as he deserves." Black's Law Dictionary 1119 (5th ed. 1979). The general principle of quantum meruit is a contract implied in law theory of recovery based on the equitable doctrine that one will not be allowed to profit or enrich oneself unjustly at the expense of another. If "benefits have been received and retained under such circumstances that it would be inequitable and unconscionable to permit the party receiving them to avoid payment therefor, the law requires the party receiving and retaining the benefits to pay their reasonable value." *Hoffman v. Reinke Mfg. Co.*, 227 Neb. 66, 69, 416 N.W.2d 216, 219 (1987).

The jury must necessarily have found that unjust enrichment flowed to the defendant from plaintiff's providing of additional services when the pipes did not fit and the rock bed was not adequate to support them. Quasi-contractual recovery via restitution of $1,250 was proper. The defendant clearly benefited from the labor of the plaintiff; thus, the plaintiff should be awarded the reasonable value of the services rendered. Stated another way, this law of restitution " 'deals with situations in which one person is accountable to another on the ground that otherwise he would unjustly benefit or the other would unjustly suffer loss.' " *Ladenburger v. Platte Valley Bank of North Bend*, 180 Neb. 167, 170, 141 N.W.2d 766, 768 (1966).

Although this court has not specifically dealt with "extra work," Nebraska clearly recognizes cases based on causes of action on both a quantum meruit theory and an express contract. In the case of *Vantage Enterprises, Inc. v. Caldwell*, 196 Neb. 671, 244 N.W.2d 678 (1976), we endorsed the practice

of joining the two theories of recovery in a single petition. As authority for the proposition that Vantage should have joined its two theories in its original petition, we illustrated that

> [s]ection 25-701, R.R.S. 1943, specifically provides: "The plaintiff may unite several causes of action in the same petition, whether they be such as have heretofore been denominated legal or equitable, or both, when they are included in any of the following classes: (1) The same transaction or transactions connected with the same subject of action; (2) contracts, express or implied; * * *." This court has consistently held that an action in quantum meruit may be joined in a petition with an action on an express contract, and a judgment based on either will satisfy the liability as to both claims where they have their origin in the same transaction. Rodgers v. Jorgensen, 159 Neb. 485, 67 N.W.2d 770 (1954); Umberger v. Sankey, 154 Neb. 881, 50 N.W.2d 346 (1951); Stout v. Omaha, L. & B. Ry. Co., 97 Neb. 816, 151 N.W. 295 (1915).

196 Neb. at 674, 244 N.W.2d at 680.

Although the *Vantage* holding concerned the application of the doctrine of res judicata to the use of the two theories in two separate lawsuits, the basis of the ruling was that where the facts arise out of the same transaction, an action on an express contract may be joined with an action for quantum meruit. See, also, *Tobin v. Flynn & Larsen Implement Co.*, 220 Neb. 259, 369 N.W.2d 96 (1985).

There was testimony from which the jury could, and obviously did, believe that when the problem of the removing and re-laying of the pipes occurred on the two separate occasions, Robert Hroch of the plaintiff warned Mr. Wiekhorst that this work would cost extra and that he would charge him for the time. Yet Wiekhorst continued to accept the plaintiff's services, knowing that they were not rendered gratuitously. Under such circumstances, and for quantum meruit purposes, the plaintiff reasonably notified the person sought to be charged that the plaintiff, in performing such services, was expecting to be paid by the person sought to be charged. See *Montes v. Naismith & Trevino Construction Co.*, 459 S.W.2d 691 (Tex. Civ. App. 1970).

This is the perfect scenario for the quantum meruit rationale to arise. With respect to the additional work to be performed, if any, by either party, there was no agreement. " 'It is only when parties do not expressly agree that the law interposes and raises a promise. . . .' " *Siebler Heating & Air Conditioning v. Jenson*, 212 Neb. 830, 833, 326 N.W.2d 182, 184 (1982), quoting 66 Am. Jur. 2d *Restitution and Implied Contracts* § 6 (1973). This implied-in-law contract then will act without regard to the intention or assent of the parties bound and will compensate the plaintiff for the reasonable value of labor and materials which it furnished. The law implies a promise to pay on the part of the defendant, when the additional labor was requested of the plaintiff's crane operator by the defendant's partner, Scott Wiekhorst, via signals, instructions, and orders. See *Bush v. Kramer*, 185 Neb. 1, 173 N.W.2d 367 (1969). The work was also knowingly accepted, used, and enjoyed by the defendant. The crane operator had never installed pipe in this manner before, and it was not the usual procedure.

The evidence of a stated rate, $125 per hour, was competent to show the value of the extra services. It was sufficient as prima facie proof of the reasonable value. See *Sorensen Constr. Co. v. Broyhill*, 165 Neb. 397, 85 N.W.2d 898 (1957). There was no evidence of probative value to the contrary.

Although plaintiff pleaded and proved a cause of action based on an express contract, it also sought recovery for different services based on extra work performed, evidence of which was introduced *before* the plaintiff moved for leave to amend. The amendment was made simply to conform pleadings to the proof. While recognizing our holdings in *Siebler Heating & Air Conditioning v. Jenson, supra*, and *Knoell Constr. Co, Inc. v. Hanson*, 205 Neb. 311, 287 N.W.2d 439 (1980), we necessarily recognize the logic of the rule from the Iowa case of *Sulzberger Excavating, Inc. v. Glass*, 351 N.W.2d 188 (Iowa App. 1984), and so hold, that an implied contract on a point not covered by an express contract is not superseded by the express contract, and if each arise out of the same transaction, they may be pleaded and tried together. Defendant's first assignment of error is without merit.

The assignment of error relating to the matter of liquidated

damages awarded defendant on its cross-petition comes to us because of the action of the trial court in overruling the motion to set aside the jury's verdict.

"This court will not set aside or direct a verdict in cases where the evidence is in conflict or where reasonable minds may reach different conclusions or inferences, as it is within the jury's province to decide the issues of fact." *Poppe v. Petersen*, 221 Neb. 877, 884, 381 N.W.2d 534, 538 (1986). Further, " '[a] jury verdict will not be disturbed on appeal unless it is clearly wrong.' " *Weiss v. Autumn Hills Inv. Co.*, 223 Neb. 885, 892, 395 N.W.2d 481, 485 (1986); *Poppe v. Petersen, supra.*

In assessing an amount of $1,700 against the plaintiff, the jury must have found that the plaintiff was responsible for a 17-day delay in the project rather than the 37 days alleged by the defendant.

> On a motion for judgment notwithstanding the verdict, the moving party is deemed to have admitted as true all the material and relevant evidence admitted which is favorable to the party against whom the motion is directed, and, further, the party against whom the motion is directed is entitled to the benefit of all proper inferences which can be deduced therefrom.

*Havlicek v. Desai*, 225 Neb. 222, 225, 403 N.W.2d 386, 389 (1987).

A review of the testimony in favor of the plaintiff shows that the crane operator was on the job the first day laying pipe. At that time, the project was already not on schedule. The progress reports also show no activity on 12 of 21 days due to rains and mud. The crane operator noted that he encountered problems in performing his duties from the start, as the road he was to use was not ready; it needed to be widened.

Although there was contrary evidence offered by the defendant, this placed a fact question before the jury, which decided the issue contrary to the defendant's position.

The judgment of the district court is affirmed.

AFFIRMED.