**Russ KEGEL and Mona Kegel, d/b/a Unique Promotional Products, Appellant,**

**v.**

**Roxanna TILLOTSON, Appellee.**

No. 2008–CA–001938–MR.

Court of Appeals of Kentucky.

Oct. 30, 2009.

Jason F. Darnall, Benton, KY, for appellant.

Charles S. Foster, Mayfield, KY, for appellee.

Before CAPERTON, DIXON and TAYLOR, Judges.

## OPINION

CAPERTON, Judge.

Russ Kegel and Mona Kegel (d/b/a Unique Promotional Products)(hereinafter Kegel) appeal the September 29, 2008, order of the McCracken Circuit Court granting the motion for summary judgment filed by Appellee, Roxanna Tillotson (Tillotson), and simultaneously denying the motion for summary judgment filed by Kegel. After a thorough review of the record, the arguments of the parties, and the applicable law, we reverse and remand.

In December of 2007, the Kegels filed their complaint against Tillotson. In that complaint, the Kegels alleged that Tillotson violated, and continues to violate a "non-compete" clause by marketing, selling, and/or taking orders for promotional products or advertising merchandise. From January of 2000 through January of 2007, Tillotson was an independent contractor with Michelle Chapman, d/b/a Unique Promotional Products. Apparently, Tillotson and Chapman were friends, and Tillotson wanted to work with Chapman to generate "a little income for herself and to help a friend." [1]

On or about March 16, 2000, Tillotson and Chapman signed a contract, which contained among other things, a non-compete clause which is the central issue of this appeal. That clause read as follows:

---

1. *See* Affidavit of R. Tillotson, ROA pp. 64–65.

> Upon termination of this contract the Contractor agrees that he/she shall not engage in the business of marketing, selling or taking orders for the purchase of promotional or advertising merchandise in the territory that the Owner sells merchandise, which is an area of at least three hundred fifty (350) mile radius from the Owner's business address, for five (5) years.

Tillotson directs this Court's attention to the fact that in entering into this contract, she remained, and was identified as, an independent contractor. That contract did not contain an assignment clause. Tillotson states that her clients were people she went to church with, or knew from her daily life or through her husband's business. For slightly over six years, Tillotson purchased products through Chapman until Chapman decided to sell her business.

On or about January 16, 2007, the Kegels acquired the business known as Unique Promotional Products from Chapman via a purchase agreement. Upon acquiring the business, the Kegels apparently made Tillotson an offer of employment. On January 23, 2007, Tillotson terminated her relationship with the Kegels and Unique Promotional Products, as evidenced by a letter of resignation submitted of record. On the next day, January 24, 2007, Tillotson began conducting business on her own as a sole proprietor under the name Divine Advertising Products.

Tillotson's business, Divine Advertising Products, sells and markets advertising specialty products, and is in the business of providing and/or selling various items to customers with custom-made promotional or advertising-type messages.

The Kegels assert that to date, Tillotson has never claimed that her business does not fall within the parameters of the non-compete clause, and has admitted that she conducted business on her own with some of the same clients who had previously been clients of Unique Promotional Products. Tillotson concedes that she conducts business with clients who previously used Unique Promotional Products, but states that these were her clients even prior to her relationship with Chapman, and that they remained with her when Chapman sold the business. Further, Tillotson argues that the non-compete clause was not assignable to the Kegels, and that in the alternative, even if it was assignable, the terms of the clause were unconscionable and therefore unenforceable.

In issuing its September 29, 2008, order, the circuit court held that the non-compete clause at issue was not assignable, and that even if it was assignable, the terms were so unconscionable as to be unenforceable. In so finding, the court stated that Tillotson and Chapman were independent contractors who contracted with each other solely in reliance on the services to be provided by each other, and that absent an assignment clause, the contract was not assignable. Furthermore, the court held that the five-year time limit and 350–mile radius set forth in the non-compete clause were terms so unconscionable as to cause the clause to be void on its face as against public policy and, therefore, unenforceable. It is from that order that the Kegels now appeal to this Court.

At the outset, we note that the issues at the heart of this appeal do not involve disputed facts. Indeed, the parties agree on all facts pertinent to the appeal. Our standard of review of an order granting summary judgment is de novo and is limited to questions of law. *Blevins v. Moran*, 12 S.W.3d 698, 700 (Ky.App.2000). Since the parties agree there are no factual disputes, our de novo review will concentrate on whether Tillotson was entitled to judgment as a matter of law, and will center on

the issues of assignability and unconscionability of the contract or lack thereof.

■ Certainly, the law in this Commonwealth clearly establishes that covenants not to compete are valid and enforceable. *See, e.g., Ceresia v. Mitchell,* 242 S.W.2d 359, 364 (Ky.1951). Assignability of non-compete clauses, however, seems to be an issue of first impression in our courts. However, the issue was addressed by the United States Court of Appeals for the Sixth Circuit in *Managed Health Care Associates, Inc. v. Kethan,* 209 F.3d 923 (6th Cir.2000), wherein it was determined that non-compete clauses are, as a matter of law, assignable. In so finding, the court stated as follows:

> In addition to opinions from the lower courts of Kentucky, this court may use the rule adopted by most of the jurisdictions that have addressed the assignability issue as persuasive authority in determining how the Kentucky Supreme Court would likely decide the question. With respect to the assignability of non-competition clauses, "[a] majority of courts permit the successor to enforce the employee's restrictive covenant as an assignee of the original covenantee (the original employer)."
>
> . . . .
>
> Based on the opinions of the lower Kentucky courts in *Choate,* the majority rule from the other states that have addressed the issue, and the additional reasons set forth above, we believe that the Kentucky Supreme Court would conclude that noncompetition clauses are assignable.

*Id.* at 929–30 (internal citations omitted).

Although the parties appear to concede that the non-compete clause would be as-signable if Tillotson had been an employee of Unique Promotional Products, Tillotson asserts that because she was an independent contractor and not an employee, the clause cannot be assigned. The Kegels argue that the policy behind enforcing and upholding the assignability and enforceability of a non-compete clause is the same regardless of whether the relationship is that of an employer and employee or owner and independent contractor.

In support thereof, the Kegels cite to *Central Adjustment Bureau, Inc. v. Ingram Associates, Inc.,* 622 S.W.2d 681, 686 (Ky.App.1981), wherein this Court upheld a non-compete clause, and in so doing, found that such clauses were "about the only protection available" to a business to prevent associates from going out on their own and taking company clients with them.[2]

The Kegels assert that in the matter *sub judice,* their predecessor, Chapman, had a vested interest in the various entities with whom they had a business relationship, and that Tillotson, by virtue of having worked with Chapman, was exposed to dealing with those entities on a first-hand basis. Accordingly, the Kegels assert that they have the same interest in preventing Tillotson from leaving and taking these clients with her, as an employer would have in the case of an employee trying to do the same. Thus, the Kegels assert that Tillotson's status as an independent contractor is a distinction without merit.

Tillotson, by contrast, asserts that as an independent contractor, her customers were hers, and solely hers, and that their business did not arise from or through Tillotson's relationship with Chapman.

**2.** In reviewing this case, we note that this case dealt with an employer and its employees, as opposed to an owner and an independent contractor. We nevertheless believe, for the reasons set forth herein, that the public policy interests remain the same, regardless of the status of the business relationship.

Further, Tillotson asserts that she wanted to work only with Chapman and with no one else. Tillotson also makes a distinction as to the nature of the business sold by Chapman to the Kegels, noting that it was not a corporation or any other legal entity, but was instead operated by Chapman as a sole proprietorship. Tillotson states that such a distinction is relevant because all cases relied upon by the Kegels involve corporate employers and employment contacts.

Tillotson also cites to *Pulaski Stave Co. v. Miller's Creek Lumber Co.*, 138 Ky. 372, 128 S.W. 96, 101 (1910), in support of her assertion that a contract is not assignable when its provisions are such as to show that one of the parties reposes a personal confidence in the other, which he would have been unwilling to repose in any other person. Tillotson asserts that the clause was simply not assignable, that the clients before and after the sale of the business to the Kegels were her clients, and that the non-compete clause itself was not assignable, was unenforceable, and was terminated with the termination of the contract.

■ First, we address Tillotson's repeated assertions that the contract between herself and Chapman was one of "personal confidence" so as to make the contract unassignable.[3] With this contention, we cannot agree. Our review of the contract reveals nothing of the sort that would indicate it was of a personal nature, or that Tillotson intended the contract to be unassignable and personal to Chapman only. Indeed, a review of the record reveals that Tillotson must have, at the very least, assumed some assignable relationship existed by virtue of her submission of a letter of "resignation" from Unique Promotional Products, dated January 23, 2007, seven days after the Kegels had purchased the business. Indeed, that letter read, in pertinent part, as follows:

> Dear Mr. Kegel: Please accept this letter as formal notification that I am resigning my association with Unique Promotional Products effective immediately.

Certainly, the need for resignation presupposes a relationship of some sort between the resignee and resignor. We find it of interest to note that in her letter of resignation, Tillotson describes her relationship as one with the company, Unique Promotional Products, and not with Chapman herself, or the Kegels themselves. In so stating, we believe that Tillotson evidenced an understanding that her relationship was one with the business entity, and not one solely of a personal nature between herself and Chapman. In making such an acknowledgment, we believe Tillotson also evidenced an implicit acknowledgment that the Kegels stood in Chapman's shoes insofar as their contractual rights were concerned.

■ With respect to the issue of Tillotson's status as an independent contractor, we agree with the Appellants that this is a distinction without merit in this instance. Certainly, we believe that sufficient precedent exists for this Court to conclude that in an employer-employee situation, the successor employer may enforce the employee's restrictive covenant as an assignee of the original covenantee.

■ In the matter *sub judice*, we find that Tillotson's status as an independent contractor does not alter the applicability

---

3. With respect to the issue of whether the contract between Tillotson and Chapman was a personal services contract, our review of the record indicates that this was not an issue raised before the trial court and, indeed, we note that Tillotson does not in her brief allege that the contract was for personal services. Accordingly, we need not address that issue further herein.

of this general principle. While Tillotson may have been an independent contractor, her relationship was with the business, Unique Promotional Products, and not with Chapman, the individual. Accordingly, her commitment was one not to compete with the business, not with Chapman herself. Therefore, we find that the non-compete clause in the matter *sub judice*, having been freely entered into by Tillotson, was assignable to the Kegels.

While we have not in the courts of this Commonwealth had the opportunity heretofore to address this issue directly, we note that it was addressed by one of our sister courts in Tennessee. In the unpublished decision of *Packers Supply Co. v. Weber*, 2008 WL 1726103 (Tenn.Ct.App.2008), the Court addressed the *Kethan* decision previously cited herein. In addressing the issue of assignability of non-compete clauses, the *Weber* court stated:

> [f]or purposes of the enforcement of the non-compete clause, it should not matter if they are considered independent contractors or employees, because the potential for unfair competition remains the same in either case. Allowing the defendants to avoid compliance with the non-compete agreement simply because of a restructuring of the business and of their employment status would exalt form over substance.

*Id.* at 7 (internal quotations omitted).

In agreeing with this reasoning, we are compelled to agree with the Appellants that the trial court, in the matter *sub judice*, erred in finding that the non-compete clause was not assignable. Accordingly, we reverse, and turn to the second issue raised on appeal, concerning whether or not the court below correctly found that the non-compete clause in the matter *sub judice* was unconscionable.

■ As noted, the court below found, without further elaboration, that "the non-

compete clause with its term of 5 years and distance of 350 miles was so unconscionable as to be void on its face as against public policy. . . ." Having reviewed the record and the arguments of the parties, this Court is of the opinion that the court below prematurely entered judgment on the issue of unconscionability. At the time that the court entered summary judgment, no depositions had been taken, substantial evidence had not been gathered, and only one set of interrogatories had been exchanged.

■ As this Court previously held in *Hammons v. Big Sandy Claims Service, Inc.*, 567 S.W.2d 313 (Ky.App.1978), agreements on restraint of trade are reasonable if, "on consideration of the subject, nature of the business, situation of the parties and circumstances of the particular case, the restriction is such only as to afford fair protection to the interests of the covenantee and is not so large as to interfere with the public interests or impose undue hardship on the party restricted." *Id.* at 315. Clearly, whether or not a particular non-compete clause is conscionable is an issue that is highly fact specific and, we believe, will more appropriately be addressed in the course of additional discovery.

■ In addition, our courts have adopted a "blue pencil" rule, whereby we are empowered to reform or amend restrictions in a non-compete clause if the initial restrictions are overly broad or burdensome. As stated by this Court in *Hammons, supra*, at 315, "[w]here the covenant as originally drawn has been found too broad, courts have had no difficulty in restricting it to its proper sphere and enforcing it only to that extent." *See also Ceresia v. Mitchell*, 242 S.W.2d 359 (Ky.1951).

Accordingly, we believe it appropriate to remand this matter to the court below for

additional findings on the issue of unconscionability, as well as a determination as to what, if any, action is appropriate by the court under the "blue pencil" rule.

Wherefore, for the foregoing reasons, we hereby reverse and remand to the McCracken Circuit Court for additional proceedings not inconsistent with this opinion.

ALL CONCUR.