BROWN SPRINKLER
CORPORATION,
Appellant,

v.

SOMERSET–PULASKI COUNTY DE-
VELOPMENT FOUNDATION, INC.;
Somerset–Pulaski County Develop-
ment Holdings, Inc.; and Consolidat-
ed Electrical Distributors, Inc., Appel-
lees.

No. 2009–CA–001185–MR.

Court of Appeals of Kentucky.

July 16, 2010.

Discretionary Review Denied by
Supreme Court April 13, 2011.

dent to arrest the Appellants were discovered     to possess a forged/false resident alien card.

Charles F. Merz (argued), Natalie Kaelin, Louisville, KY, for appellant.

John B. Adams (argued), Somerset, KY, for appellees, Somerset–Pulaski County Development Foundation, Inc.; and Somerset–Pulaski County Development Holdings, Inc.

Before CLAYTON and KELLER, Judges; BUCKINGHAM,[1] Senior Judge.

## OPINION

KELLER, Judge:

Brown Sprinkler Corporation (Brown) appeals from the circuit court's summary judgment in favor of Somerset–Pulaski County Development Foundation, Inc. (the Foundation). On appeal, Brown argues that the trial court erred when it determined Brown was foreclosed from pursuing an equitable remedy because it negligently failed to perfect a mechanics' lien. Having reviewed the record and the arguments of the parties, we reverse and remand.

## FACTS

The essential facts in this case are not in dispute. Brown designs and installs sprinkler systems for commercial and industrial buildings. The Foundation entered into a contract with Cecil Saydah Company (CSC), a California company,[2] for the lease of property to be used as a manufacturing facility. Under the terms of the agreement, CSC was required to pay $1.00 per year as rent to the Foundation which would provide $1,500,000 to CSC for the purposes of improving the property. In return CSC would create more than 300 jobs for the Somerset–Pulaski County area. One of the major improvements that CSC made to the existing property was a 37,000 square-foot addition. In order to obtain insurance on the property, CSC was required to install a sprinkler system in the new addition. Thus, it contracted with Brown in March 2004 for the installation of a sprinkler system at a cost of $59,900.00. By August 2004, CSC had undergone bankruptcy liquidation in California and abandoned the property without paying Brown any portion of the contract price.

The contract between CSC and the Foundation specified that Somerset–Pulaski County Development Holdings, Inc. (the Holding Company) would retain "title and control" of the property unless CSC exercised its option to purchase the property outright. The contract further specified that any improvements made would become the property of the Foundation as an integral part of, and not to be separate from, the land. The Holding Company was not a party to the contract between Brown and CSC, but it was aware that the addition had been erected and was being used to store materials and products.

By notice dated August 30, 2004, Brown learned that CSC had liquidated all of its assets and that the Foundation had reclaimed possession of the property, including the addition containing the sprinkler system installed by Brown.[3] At this point Brown attempted to file a lien to secure

---

1. Senior Judge David C. Buckingham sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

2. Although both parties state that CSC is not a party to this action, it appears that CSC was named as a party in Brown's amended complaint. There is no indication in the record that the trial court ever dismissed CSC.

3. The property has since been leased to an-

payment. However, the court determined that the lien was faulty,[4] and Brown abandoned the claim for enforcement of the lien. Brown then pursued an action in *quantum meruit* and moved for summary judgment based on the theory that the Foundation had been unjustly enriched. The Foundation also moved for summary judgment arguing that Brown had an adequate legal remedy under Kentucky Revised Statute (KRS) 376.010, the mechanics' lien statute and, therefore, Brown's equitable remedy of unjust enrichment was barred.

The trial court denied Brown's motion but granted the Foundation's. In its order, the trial court found that Brown, through its own negligence, had failed to perfect its lien, thus losing its legal remedy. According to the trial court, Brown's failure to successfully pursue its legal remedy foreclosed it from proceeding in equity. The trial court further noted that permitting Brown to proceed in equity would render Kentucky's lien law "pointless." This appeal followed.

## STANDARD OF REVIEW

■ Whether the existence of KRS 376.010 abrogates the common law, and thus bars Brown from pursuing an equitable remedy, is a question of law. Therefore, the standard of review is *de novo*. *Kegel v. Tillotson*, 297 S.W.3d 908, 910 (Ky.App.2009). With this standard in mind, we address the issues raised by Brown on appeal.

## ANALYSIS

■ Brown argues that the availability of a legal remedy under KRS 376.010 does not foreclose the availability of a common law equitable remedy in *quantum meruit*. For the following reasons, we agree and reverse and remand.

■ The Kentucky Legislature enacted KRS 376.010, the mechanics' lien statute, which provides that:

> Any person who performs labor or furnishes materials, for the erection, altering, or repairing of a house or other structure or for any fixture or machinery therein ... shall have a lien thereon, and upon the land upon which the improvements were made or on any interest the owner has therein, to secure the amount thereof....

KRS 376.010(1). As stated in *Bee Spring Lumber Co. v. Pucossi*, 943 S.W.2d 622, 623 (Ky.1997), "[t]he purpose of KRS 376.010 ... [is] to provide the suppliers and laborers of building materials some financial security in collecting their contract price by allowing the real property to be encumbered for the amount of the debt." While KRS 376.010 provides for an automatic lien, a lien holder must take additional steps in order to perfect the lien. *Id.* Both parties agree that Brown did not properly take those necessary steps and its lien was not perfected.

The Foundation contends that because Brown failed to correctly pursue its statutory remedy by obtaining a mechanics' lien, it may not recover for unjust enrichment. The underlying premise of Brown's argument is that KRS 376.010 provides a sole and exclusive remedy for laborers and suppliers of building materials when they are not paid for labor or materials used to benefit another's property.

■ First, we note that the statute does not specifically state that a mechanics' lien

---

other business known as UGN which is currently making use of the sprinkler system that was installed by Brown.

4. The proper address of the property was not listed on the lien. Brown listed the Foundation's actual address as opposed to the address of the building housing the sprinkler system.

is the only course of action to be taken by those seeking relief. Furthermore, the statute does not contain language that would lead us to conclude the legislature intended to create an exclusive remedy. In order to abrogate the common law and create an exclusive statutory remedy, the legislature must specifically and explicitly state that it intends to do so. *Stovall v. A.O. Smith Corp.*, 676 S.W.2d 475, 476 (Ky.App.1984). We cannot assume, presume, or infer such legislative intent. *Day v. Day*, 937 S.W.2d 717, 719 (Ky.1997).

In *Guarantee Electric Co. v. Big Rivers Electric Corp.*, 669 F.Supp. 1371 (W.D.Ky. 1987), the Federal District Court addressed this issue and we find its reasoning to be persuasive. Unlike Brown, the subcontractor in *Guarantee Electric* did not attempt to perfect its lien, but simply pursued equitable relief. The Federal District Court noted, as we have, that KRS 376.010 does not "specifically state that its remedy is exclusive as to any or all other claims a subcontractor may have related to a transaction involving the improvement of property." *Id.* at 1378.

In reaching that conclusion, the Federal District Court relied on *Perkins v. Daugherty*, 722 S.W.2d 907, 909 (Ky.App.1987), in which this Court indicated that common law and statutory remedies are independent of one another. The Federal District Court then expanded on our holding in *Perkins* by noting the difference between the remedy at common law and that provided in the mechanics' lien statute.

> The primary function of the mechanic's lien is to create a claim by law to secure priority of payment. The perfected lien operates only as against the property or *in rem* ... and must generally be based upon a contract or written consent. The common law action, on the other hand, creates no priority of payment, is equitable in nature ... and results in a money judgment against a person or *in person-*

*am.* There need not be any express agreement or written contract. In light of these differences, the liberal construction given the language of the statute by Kentucky courts and its beneficial purpose, it would be illogical for this Court to assume that, at the same time the Kentucky Legislature sought to expand a subcontractor's ability to collect a debt for improvements to property, it also intended to foreclose every other opportunity for recovery when the subcontractor fails to comply with the procedural prerequisites of the statute. If such is the intent of the Legislature, then let them say so.

669 F.Supp. at 1379–80.

We agree with the holding in *Guarantee Electric* that, because KRS 376.010 does not expressly state that its remedy is sole or exclusive, the doctrine of unjust enrichment is not abrogated by its enactment. Thus, Brown's failure to properly file a mechanics' lien under KRS 376.010 does not preclude it from attempting to recover under a theory of unjust enrichment.

The Foundation argues that the court in *Guarantee Electric* failed to address the common law rule that equity claims are precluded where complete and adequate legal relief is available. In support of its argument, the Foundation relies on *Bolen v. Bolen*, 169 S.W.3d 59 (Ky.App.2005), which involved the sale of real property under an installment sales agreement. In *Bolen*, the trial court granted the appellant the equitable remedy of reconveyance. This Court remanded the case to the trial court for additional proceedings after concluding that reconveyance was not the appropriate remedy.

Pointing to a footnote in *Bolen*, the Foundation contends that this Court held that the existence of legal remedies abrogates equitable remedies, regardless of legislative intent. We disagree. First, the issue in *Bolen* involved a vendor's lien, not

a mechanics' lien. Second, while this Court stated in *Bolen* that reconveyance was not the appropriate remedy, it did not state that no remedy was available. Finally, we note that the language relied on by the Foundation is from a footnote in *Bolen*. The cases cited in that footnote dealt with a mortgage/lien (*Gabbard v. Watkins*, 280 Ky. 257, 133 S.W.2d 54 (1939)), and an injunction (*Wunderlich v. Scott*, 242 Ky. 481, 46 S.W.2d 753, 755 (1932))-not with a mechanics' lien. Therefore, *Bolen* is of little persuasive value.

■ Finally, we note the Foundation's argument that one of the purposes of KRS 376.010 is to provide subsequent creditors and purchasers of property notice of pending claims. According to the Foundation, if we reverse the trial court's summary judgment, we will thwart that statutory purpose. We disagree for three reasons. First, as we previously stated, "the purpose of KRS 376.010 ... [is] to provide the suppliers and laborers of building materials some financial security in collecting their contract price by allowing the real property to be encumbered for the amount of the debt." *Bee Spring Lumber Co. v. Pucossi*, 943 S.W.2d at 623. While notice to purchasers of real property is a side effect of the mechanics' lien statute, the statute does not provide that such notice is a purpose of the Act.

Second, the *lis pendens* statute sufficiently provides for notice of litigation involving real property.

> No action, cross-action, counterclaim, or any other proceeding, except actions for forcible detainer or forcible entry or detainer, commenced or filed in any court of this state, in which the title to, or the possession or use of ... real property, or any interest therein, is in any manner affected or involved ... shall in any manner affect the right, title or interest of any subsequent purchaser, lessee, or encumbrancer of such real property ...

except from the time there is filed, in the office of the county clerk of the county in which such real property or the greater part thereof lies, a memorandum stating:

> (a) The number of the action, if it is numbered, and the style of such action or proceeding and the court in which it is commenced, or is pending;
>
> (b) The name of the person whose right, title, interest in, or claim to, real property is involved or affected; and
>
> (c) A description of the real property in the county thereby affected.

KRS 382.440(1). Thus, this statute protects subsequent purchasers of property and creditors by providing that, unless a purchaser or creditor has proper notice of pending claims, he or she cannot be held responsible for those claims.

Third, the argument raised by the Foundation is one of public policy and thus not for this Court to address. This Court leaves matters of public policy in the hands of the Legislature. *See Wilfong v. Commonwealth*, 175 S.W.3d 84, 93 (Ky.App. 2004).

## CONCLUSION

For the foregoing reasons, we hold that, because KRS 376.010 does not specifically abrogate the common law, Brown is not foreclosed from pursuing its unjust enrichment claim. Therefore, we remand this matter to the circuit court, with instructions to reinstate Brown's case so that Brown can pursue that claim. However, we note that we are not drawing any conclusions regarding the merits of Brown's claim; we are only concluding that Brown may pursue its cause of action.

ALL CONCUR.